

IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NICOLE A. ANTHONY,

       Plaintiff,

       v.

ARTHUR GLICK TRUCK SALES, INC., et al.; ARTHUR GLICK (President, Arthur Glick, Inc.); TODD GLICK (Vice President, Arthur Glick, Inc.); BARRI GLICK (Secretary, Arthur Glick, Inc.); and ROBIN BOLLES (Comptroller, Arthur Glick, Inc.),

       Defendants.

**15 CV 7270**

)

)

**JURY TRIAL DEMANDED**

## COMPLAINTS

COMES NOW the Plaintiff, NICOLE A. ANTHONY (hereafter "NAA"), who complains against the Defendants as follows:

## PRELIMINARY STATEMENT

This is an Employment Discrimination on the basis of Race and Age, and Retaliation Complaint, inter alia, brought by a citizen of the United States of America who lives in New York seeking recovery of damages and alleging violations of Title VII of the Civil Rights Act of 1964, and any amendments, inter alia, and a conspiracy to do all the above.

Plaintiff seeks nominal, compensatory, back pay, and punitive damages, in addition to injunctive relief and Declaratory Judgment, attorney fees, and all costs associated with bringing and maintaining these actions.

## JURISDICTION AND VENUE

Plaintiff invokes this Court's jurisdiction pursuant to 28 U.S.C. 1331 (Federal Question).

This Court has supplemental jurisdiction pursuant to 42 U.S.C. Secs. 2000e-5(f)&(g), and 42 U.S.C. Sec. 1981(b), inter alia, in that Plaintiff alleges violations of the Civil Rights Act of 1964, the Equal Pay Act (EPA), the Family Medical Leave Act (FMLA), and the Whistleblowers Act, and is entitled to recover compensatory, punitive, and back-pay damages, in addition to other relief.

Venue is proper pursuant to 28 U.S.C. Sec. 1391(b)(1)&(2).  All Defendants are located in the Southern District of New York, and the events surrounding the claims occurred in the Southern District of New York, Sullivan County;  White Plains, New York, therefore, is the most convenient site for all parties involved.

## Parties

1.  Plaintiff Nicole A. Anthony ("NAA") is a citizen of the State of New York, the Mother of four (4) children, and resides in Loch Sheldrake, Sullivan County, New York at the time the violations complained of herein occurred.

2.  Defendant Arthur Glick Truck Sales, Inc., et al. ("Glick, et al."), is a corporation doing business in Sullivan County, New York, with corporate headquarters located at 48 Bridgeville Road, P.O. Box 349, Monticello, NY 12701, and includes, as et al., Glick Hyundai, Glick Auto Group, NY Kenworth, Inc., and Glick Leasing Ltd.  Defendant Glick, et al. is sued in its individual capacity.

3.  Defendant Arthur Glick ("AG") is a citizen of the State of New York, is President and owner of Defendant Glick, et al., resides in Sullivan County, NY, and is responsible

2

for the unlawful acts and practices of Glick, et al. against Plaintiff NAA.  He is sued in his individual and official capacities.

4.   Defendant Todd Glick ("TG") is a citizen of the State of New York, is Vice President and part owner of Defendant Glick, et al., resides in Sullivan County, NY at the time the violations complained of herein occurred. He is sued in his individual and official capacities.

5.   Defendant Barri Glick ("BG") is a citizen of the State of New York, is Secretary and part owner of Defendant Glick, et al., resides in Sullivan County, NY at the time the violations complained of herein occurred.  She is sued in her individual and official capacities.

6.   Defendant Robin Bolles ("Bolles") is a citizen of the State of New York, is Comptroller of Defendant Glick, et al., resides in Sullivan County, NY at the time the violations complained of herein occurred.  Defendant Bolles is sued in her individual and official capacities.

## FACTS

7.   On or about March 27, 2007, Plaintiff NAA was hired by Glick, et al.'s former Comptroller, Joe Twyman, for a position in the Accounting Department to do Accounts Receivable.

8.   Plaintiff NAA was the only Black person working at Glick, et al., from the time she was employed until she was fired on May 17, 2013 and, on information and belief, there are still no Black employees to this date.

9.   In November of 2010, NAA contacted her former attorney for assistance with what she explained was a hostile working environment and on-going discrimination

based on her race, age, and gender.

10. From day one on the job NAA was subjected to what she terms "catty" women who verbally abused her almost on a daily basis.

11. NAA brought this conduct to the attention of Defendants AG, TG, BG, Bolles, and also to Joe Twyman, and was always told that the situation would be taken care of.

12. When the situation did not change, in March of 2010 NAA sent an e-mail to Defendant AG, with copies to all other Defendants, complaining that the situation had not been taken care of.

13. In response to what was now memorialized in writing, Defendants contacted their insurance providers, who told Defendants to formally address NAA's concerns. As a result, a letter outlining guidelines was then written up and given to employees to sign; some employees signed and some didn't, and things did not change.

14. These Defendants, and the employees, discriminated against NAA on the basis of her race, sex, and age. NAA was the youngest employee at Defendant Glick, et al., and the only Black person and woman.

15. Discrimination took the form of paying NAA at a much lower rate than the duties she performed were worth, where she was hired to do Accounts Receivable and was paid at a rate not commensurate with the work she performed.

16. As further discrimination and underpayment, NAA was called upon to do Accounts Payable (AP), also, with no additional compensation.

17. When NAA sought fair compensation for the work she was performing, Defendants, and each of them, promised that her performance would be evaluated in

4

three (3) months and they would decide on additional compensation. This never occurred.

This occurred in 2010, and NAA, needing to care for her three (3) sons at the time,

continued to work at a $14.00 per hour rate.

18. Fed up with being paid only $14.00 per hour for doing two (2) jobs, each of which

commands more than that amount separately, NAA began to succumb to serious

emotional distress.

19. Additionally, these Defendants, in particular AG, TG, and Bolles added insult to

injury by attempting to force NAA to train another Caucasian woman in the duties NAA

performed, and they were to pay her a higher wage than they were paying NAA.

20. This was the straw that broke the camel's back, so on May 17, 2013, NAA

informed all Defendants, by e-mail, that she would not be in the office that day because

she was sickened with stress due to the harsh, hostile, racist and discriminatory work

environment; that despite many e-mails and other means of addressing her issues directly

with the bosses, she was never, ever addressed by AG, TG, and/or BG, but only sent

disparaging demands through Defendant Bolles; that another White-woman employee

requested a change in employment and increase in pay along with a new opportunity for

advancement, and immediately these Defendants made advances and offers toward her to

stay.

21. These Defendants attempted to insist that NAA teach this other and newer White

woman the jobs she was performing in order to replace and fire her.

22. NAA refused to train the woman, and she informed Defendants that she would not

resign.  She also informed them that she would return to work on the following Monday.

23. On May 17, 2013, NAA notified the Defendants that she would not be into the

office due to being sick with stress, etc., based on her treatment in the workplace and by

the Defendants, seeking to return to work the following Monday; however, the

Defendants deprived her of the protection of the FMLA and immediately terminated her.

24. Defendants immediately terminated NAA's employment, having conspired all

along to do so.

### EEOC PROCEEDINGS

25. On September 21, 2013, NAA filed a 180/300-day Letter/Complaint with the

Equal Employment Opportunities Commission (Exhibit "A") outlining her concerns with

Defendants.

26. The EEOC responded on November 20, 2013, by forwarding NAA an EEOC

Form 5 to review, make any corrections, and sign, under EEOC Charge No. 520-2014-

00057.  The Form 5 was returned to the EEOC, with corrections to NAA's date of birth

(which is 7/30/84), on December 16, 2013. (Exhibit "B")

27. On September 9, 2014, the EEOC forwarded a copy of Defendants' Position

Statement, dated September 2, 2014, to NAA and invited rebuttal. In that Statement

Defendants included knowingly, totally false statements regarding NAA's Complaint.

(Exhibit "C")

28. NAA filed her Formal Rebuttal, dated September 17, 2014, wherein she

effectively showed that Defendants' Position Statement was nothing but a pack of lies.

(Exhibit "D").

29. After reviewing all submissions, and completing their investigation, the EEOC

ruled in favor of NAA, on April 29, 2015, and specifically found discrimination on the

basis of race and age, and retaliatory firing because of NAA's complaints about the work

6

environment. EEOC specifically found Defendants' Position Statement/Defense to be untrue and unable to withstand scrutiny. (Exhibit "E")

30. Within the April 29, 2015, was an advisory to Defendants that the EEOC, having found reasonable cause to believe that the violations occurred, invited Defendants into the conciliation process in an attempt to achieve a just resolution of the matter.

31. On June 19, 2015, after conciliation communications and attempts were ignored by Defendants, the EEOC determined that efforts to conciliate were unsuccessful and gave the required notice to Defendants that further attempts to conciliate would be futile or unproductive. (Exhibit "F")

32. On June 19, 2015, the EEOC issued NAA a Notice Of Right To Sue (Conciliation Failure) Letter, advising her of her right to bring suit within 90 days of June 19, 2015. (Exhibit "G")

33. Every factual allegation, and information contained in all of NAA's submissions to the EEOC are incorporated herein by reference and made a part hereof in their entirety, including but not limited to a June 13, 2013, document entitled "Complaints at Arthur Glick Truck Sales, INC", that revealed the shady and unlawful/criminal practices at Defendant Glick, et al. (Exhibit "H")  This federal lawsuit follows.

34. All acts and omissions on the part of all Defendants were done with malice, and with reckless indifference to the protected rights of NAA.

## CLAIMS FOR RELIEF

35. Plaintiff NAA incorporates by reference paragraphs 7-34 as if recited in full herein.

36. Defendants herein, and each of them, individually and collectively, have

7

conspired to, and did, retaliate against Plaintiff NAA by terminating her employment for complaining about the hostile working environment, and Whistleblowing about Defendants' unlawful and criminal business practices.

37. Defendants herein, and each of them, individually and collectively, conspired to, and did, discriminate against Plaintiff NAA in the workplace on the basis of her race because she is Black.

38. Defendants herein, and each of them, individually and collectively, conspired to, and did, discriminate against Plaintiff NAA in the workplace on the basis of her gender as a Black woman.

39. Defendants herein, and each of them, individually and collectively, jointly and severally, conspired to, and did, discriminate against Plaintiff NAA in the workplace on the basis of her age, as she was the youngest employee at the age of 23, and the only Black and a woman.

40. Defendants, and each of them, individually and collectively, jointly and severally, conspired to, and did, subject Plaintiff NAA to such discrimination and harsh/hostile working conditions that NAA suffered extreme emotional distress and continued embarrassment. This was knowing, willful, and intentional, and all to the detriment of Plaintiff.

41. Defendants, and each of them, individually and collectively, jointly and severally, conspired to, and did, deprive Plaintiff of her rights under the Family Medical Leave Act by terminating her when they were informed of her physical and stressful condition on May 17, 2013.

42. Defendants, and each of them, individually and collectively, jointly and severally,

conspired to, and did, retaliate against NAA for blowing the whistle about their unlawful and criminal business practices, by terminating her employment and then deliberately filing a knowingly false Position Statement/Defense with the EEOC.

## **DEMAND FOR RELIEF**

A. Plaintiff seeks the award of compensatory damages in the amount of Two-Hundred Fifty Thousand Dollars ($250,000.00) as against each Defendant, separately, for each Claim, for the conduct set forth in this Complaint.

B. Plaintiff seeks the award of punitive damages in the amount of Seven Hundred Fifty Thousand Dollars ($750,000.00) as against each Defendant, separately for each Claim, for the conduct set forth in this Complaint.

C. Plaintiff seeks back pay commensurate with the job positions she performed, at the reasonable going rates set for these professional positions, under the EPA.

D. Plaintiff seeks compensatory and punitive damages at a rate allowable under the FMLA against each Defendant individually.

E. Plaintiff seeks damages under the Whistleblowers Act in accordance with amounts allowable by law, as against each Defendant, individually and separately, jointly and severally.

F. Plaintiff seeks compensatory, punitive, and back-pay damages at a rate allowable pursuant 42 U.S.C. Sec. 1981(b), as against each Defendant individually.

G. Plaintiff seeks Declaratory Relief pursuant to 28 U.S.C. Sec. 2201, for this Court to declare the rights of the parties in each Complaint separately.

H. Plaintiff seeks Injunctive Relief in the form of a Temporary Restraining Order, in Lieu of a Permanent Injunction, to Enjoin Defendants herein, and each of them,

from continuing to violate the laws as outlined herein.

I.   Plaintiff seeks court costs and all expenses associated with bringing and

maintaining this action, to be awarded individually, jointly and severally against

all Defendants, separately for each Claim.

J.   Plaintiffs seek attorney fees under 42 U.S.C. Sec. 1988, and 28 U.S.C. Sec. 2412,

and,

K.   Such other and further relief as this Honorable Court may deem just and proper in

the premises.

WHEREFORE, Plaintiff respectively requests the Court grant her all relief to

which she is entitled.

## DECLARATION OF TRUTH

I HEREBY DECLARE, UNDER PENALTY OF PERJURY, 28 U.S.C. Sec.

1746, that the foregoing is true and correct to the best of my knowledge.

Respectively Presented,

NICOLE A. ANTHONY
1114 Route 52
P.O. Box 70
Loch Sheldrake, NY 12759
(845) 798-3833
Plaintiff, Pro Se

Dated:  September /z, 2015
Loch Sheldrake, NY 12759

10

"A"

Nicole A. Anthony
1114 Route 52
Loch Sheldrake, NY 12759 -0010
(845) 798-3833

September 21, 2013

Equal Employment Opportunities Commission (EEOC)
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004
Tel. (800) 669-4000

Re:   Formal 180/300-day Letter/Complaint
       Title VII (Civil Rights Act of 1964)

Dear Sir/Madam:

This is to serve as my formal 180/300-day Letter/Complaint under Title VII (Civil Rights Act of 1964), Sec. 2000e-2(a)(1)&(2), alleging Hostile Work Environment, Discrimination on the basis of Race, Sex and Age, Retaliation, and Harassment, inter alia, against 1) Arthur Glick Truck Sales, Inc., 2) Arthur Glick, President, 3) Todd Glick, Vice-President, 4) Barri Glick, Secretary, 5) Robin Bolles, Comptroller, and 6) Joe Twyman, former-Comptroller.

I was hired by former-Comptroller, Joe Twyman, and began working for Arthur Glick Truck Sales, Inc., on or about March 27, 2007, to handle Accounts-Receivable. I was the only Black person working for Arthur Glick Truck Sales, Inc., and to this day there are no other Black employees, to my knowledge, since I was fired on May 17, 2013. I was fired in retaliation for complaining about hostile and unfair working conditions and asking for promises made to me to be fulfilled.

In November of 2010 I contacted my former attorney, Cory Rosenbaum, Esq., for assistance with the hostile working condition and on-going discrimination based on my race, gender and age. I informed him that from my first day at Arthur Glick Truck Sales, Inc., in March, 2007, I'd had to deal with "catty" women who also verbally abused me. I brought this to the attention of Arthur Glick, Todd Glick, Barri Glick, Joe Twyman, and Robin Bolles. I was always told that the situation would be taken care of. However, it did not change; so, in March, 2010, I wrote an e-mail to Arthur Glick, with copies to all others concerned here except Joe Twyman. Since I had now put my concerns in writing, these persons contacted their insurance providers who told them to formally address the employee concerns. A letter outlining guidelines was then written-up and given to employees to sign; some did, some didn't, and things did not change.

These persons discriminated against me on the basis of my race, sex, and age. I was the youngest employee at Arthur Glick, Inc., and the only Black person and woman.

10/16/13  Nicole Anthony

Page 2 of 2

Discrimination took the form of paying me at a much lower rate than the duties I performed were worth. I was hired to do Accounts Receivable, and paid at a rate not commensurate with the work I performed, yet I was called on and made to do Accounts Payable, also, with no additional compensation. And despite them promising me that they would evaluate my performance in three months and decide on additional compensation, this never occurred.

Fed up with being paid only $14.00 per hour for doing two jobs, each of which command more than $14.00 per/hour, in addition to these persons, particularly Arthur and Todd Glick and Robin Bolles, attempting to force me to train another Caucasian woman in the duties that I performed, and to pay her a wage higher than they were paying me, I informed these persons, by e-mail on May 17, 2013, that I would not be in the office that day; that I was sickened with stress due to the harsh, hostile, racist and discriminatory work environment; that despite many e-mails and other means of addressing my issues directly with the bosses, I was never, ever addressed by Arthur, Todd, and/or Barri Glick, but only sent disparaging demands through Robin Bolles; another White-woman employee requests a change in employment and increase in pay, along with a new opportunity for advancement, and immediately these persons made advances and offers toward her to stay. These persons (Arthur, Todd, Barri, and Robin) attempted to insist that I teach this other and newer White woman the jobs I was performing in order to replace and fire me. I refused to train this woman, and I informed them that I would not resign. I also told them that I would return to work on the following Monday. Nevertheless, I was terminated immediately. In addition to the complaints made herein, I also allege a conspiracy on the part of each and every one of them to discriminate and retaliate against me in the manner demonstrated herein.

Yours,  Nicole A. Anthony

*Nicole A. Anthony*

"B"

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 520-2014-00057 |

New York State Division Of Human Rights                                    and EEOC
*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Nicole Anthony | (845) 798-3833 | 01-01-1940 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 1114 Route 52, *NA* P. O. Box 70 | Loch Sheldrake, NY 12759 | 09-30-84(?) |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| ARTHUR GLICK TRUCK SALES INC. | 15 - 100 | (845) 397-2859 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 48 Bridgeville Road, | Monticello, NY 12701 | (845) 794-2100 *NA* |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☐ RETALIATION   ☒ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest                    Latest
                            05-17-2013

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

SEE ATTACHED

15

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT *Nicole Anthony* |
| 12/16/13   *Nicole Anthony* Date        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* December 17, 2013 *Jean E Mann* |

(( 𝒞 ))





48 Bridgeville Rd.  PO Box 349.  Monticello, NY 12701
(845) 794-2100   Fax: (845) 794-6061

**Glick Auto Group**
**NY Kenworth Inc.**

**Glick Leasing Ltd.**
**Arthur Glick Truck Sales, Inc**

September 2, 2014

Enforcement Unit
U.S. EEOC
33 Whitehall Street, 5th Floor

REFERENCE: EEOC CHARGE NUMBER 520-2014-00057

ATTENTION: ADR UNIT

Ms. Anthony was not fired due to her supposed complaint of working conditions.  We never received any complaint of this nature from Ms. Anthony.

Ms. Anthony states Arthur Glick Truck Sales, Inc. contacted our insurance company due to her allegations of "catty personnel". Arthur Glick Truck Sales, Inc. did not contact any insurance company, but did request that employees sign a statement regarding proper behavior to fellow employees.

The statement regarding the only black person and woman is ridiculous.  Ms. Anthony was employed to do regular accounting functions and was paid accordingly.  Race and gender never entered the picture.

If Ms. Anthony felt underpaid, even though other than the Comptroller, she was the highest paid in the Bookkeeping Department and could have easily tendered her resignation if dissatisfied.

Ms.Anthony was terminated because of continual lateness, absences and refusal to train another employee.  The training she was asked to perform was necessitated by her continued tardiness and absences.

Very truly yours,

Todd Glick



Nicole A. Anthony
1114 Route 52
Loch Sheldrake, NY 12759
(845) 798-3833

September 17, 2014

Equal Employment Opportunities Commission (EEOC)
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004
Tel. (800) 669-4000

Attn: Kevin J. Berry, District Director

Re:   Formal Rebuttal For EEOC Charge No. 520-2014-00057
      Title VII (Civil Rights Act of 1964)

Dear Sir/Madam:

This is to serve as my formal rebuttal to the position statement submitted by Respondent Arthur Glick Truck Sales, Inc., dated September 2, 2014, and submitted by Todd Glick. I will address said statement in the order of information provided therein.

1) Todd Glick, and whomever he is speaking for, is lying when he says that I was not fired because of my complaints and that he never received any complaints of this nature from me. My May 17, 2013 e-mail was the last that I sent to them (see attachment "A"). It speaks for itself. Also with my EEOC complaint I included a copy of an e-mail that I sent to my former attorney, dated May 16, 2013, seeking his assistance in resolving the matter at Glick. Attached to that e-mail is a copy of a February 25, 2013 e-mail that I had sent to Arthur, Todd, and Robin Glick. It is perfectly clear then that Todd Glick is lying when he says I never complained.

2) Arthur Glick never had an employee handbook. Behavior between staff had gotten so bad that Todd Glick reached out to their insurance company. The insurance company gave them the idea to have the employees sign such a waiver. Todd never cared to be bothered with the problems in his business; he would rather ignore them altogether. Contact their insurance company and the insurance company will verify that they were contacted and suggested a solution. Another BIG LIE from GLICK.

3) Todd claims that my statement concerning my being the only Black employee is "ridiculous." In the 6 years that I was employed there were no other Black people hired AT ALL! No technicians, no salespersons; no other Black person besides myself. Any office staff working there will verify this. There were many Black applicants for available positions. NONE WERE HIRED! It must be

Page 2 of 2

remembered that Joe Twyman, the former comptroller, hired me before I met Todd or Arthur Glick. The Glicks must think EEOC is a joke and can be lied to with impunity. Please ask your investigators to interview office personnel who are not afraid to tell the truth.

4) Todd Glick again attempts to fool the EEOC with double-talk, lies, and misleading statements. **THERE WERE ONLY 2 PEOPLE IN THE BOOKKEEPING DEPT.**, myself and Robin Bolles. She was paid a salary averaging $52,000-$57,000 annually for just being the comptroller, yet I did 2 portions of the company accounting, Accounts Payable (A/P) and Accounts Receivable (A/R), and received less than half Robin's salary wage for doing twice as much work. Other persons hired prior to myself to work as either A/R or A/P, such as Susan Gunning, was hired for A/P in April 2007, and hired with a salary. Even the DMV Title Clerk was paid $35,000 annually for her services. All these other people are White females. Only the Office Receptionist was hired at an hourly rate.

5) Mr. Glick states that I was terminated due to continued latenesses and absences. This is totally false. I have been late a few times within the 6-year period that I worked there, but almost never was I absent. I was at work almost every working day. If lateness and absences were the cause of my termination, why didn't Glick report that to the Labor Department's Unemployment Commission when I applied for unemployment insurance benefits. If I had been terminated for lateness or absenteeism I would not have received unemployment benefits. Neither Arthur, Todd, nor Robin Glick would give an explanation to the Dept. of Labor, or myself for that matter, as to why I was terminated. It is only now that an EEOC complaint has been filed that they can no longer ignore that they make these false claims. Todd Glick fired me in retaliation for sending him a response to his unfair demands. (Please see May 16, 2013 and February 25, 2013 e-mails as attachments A-E of the original complaint) See, also, November 18, 2010, e-mail to attorney Cory Rosenbaum concerning working conditions at Glick.

In closing I would like to state that my EEOC Complaint is not just for Race and Age discrimination, it is also for Sex and Retaliation discrimination. Those 2 boxes on the Charge of Discrimination form should be checked, also.

Yours,

Nicole A. Anthony

(( E ))

 **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY  10004-2112
For General Information: (800) 669-4000
TTY: (800)-669-6820
District Office: (212) 336-3620
General FAX: (212) 336-3625

## DETERMINATION

**Charging Party**                                    **Charge No:**
Nicole Anthony                                        520-2014-00057
1114 Route 52
Loch Sheldrake, New York 12759

**Respondent**
Arthur Glick Truck Sales, Inc.
48 Bridgeville Road
Monticello, NY  12701

I issue the following determination on the merits of the subject charge.  The Respondent, Arthur Glick Truck Sales, Inc. is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended.  All requirements for coverage have been met.

The Charging Party alleges that she was discharged from her book keeper position because of her age (1/1/1940), race (African-American) and in retaliation for complaining of a hostile work environment. The Charging Party was hired by Arthur Glick Truck Sales (Respondent) in 2007 as a bookkeeper in the accounting department.  The Charging Party alleges that she was paid a lower salary and was forced to perform work in accounts payable although she was hired to only perform work in accounts receivable.  In November 2010, Charging Party complained that other coworkers were verbally abusing her in the work place.  After reporting the verbal harassment, the Respondent required all employees to sign a statement regarding proper behavior with their coworkers.  After complaining about the harassment, the Charging Party maintains that she was required to train a younger Caucasian employee, who was receiving a higher salary.  The Charging Party complained that she was on sick leave on May 17, 2013 and when she returned to work, she was terminated on the following Monday. The Charging Party states that she is the only Black woman working for the Respondent

The Respondent denies discriminating against Charging Party.  In its position statement, the Respondent asserts that the Charging Party was terminated due to her continued lateness, absences and her refusal to train another employee.  The Respondent denies that the Charging Party was terminated because she had complained.  The Respondent states that the Charging Party never complained about workplace harassment. The Respondent states that the Charging Party was hired to perform regular accounting functions and was paid accordingly.  The Respondent states that the Charging Party was the highest paid employee in the Bookkeeping Department.  The Respondent maintains that it was ridiculous for the Charging Party to allege that she was the only Black female in the workplace.

The record shows that it was not true that the Charging Party was the highest salaried employee in the Bookkeeping Department. There were only two employees in the Bookkeeping Department and the other employee was the company comptroller. The comptroller was paid nearly twice as much as the Charging Party. The Charging Party states that she was late a few times and nearly never absent during her six year tenure with the Respondent. As of this date, the Respondent has not provided the Charging Party's attendance record to support the reason that her termination was due to her absences and lateness. The record also show that the Respondent employs only one other African-American and that the Charging Party was replaced by a non-Black woman. Although requested, the Respondent failed to provide the salary of the replacement employee. Finally, the record shows that the Charging Party had in fact complained about her verbal abuse in the workplace. The Respondent admits that employees were required to sign a statement on proper workplace behavior.

Based on the above, Respondent's asserted defense does not withstand scrutiny and the Commission has determined that there is reasonable cause to believe that the Respondent has subjected the Charging Party to age and race discrimination and retaliated against the Charging Party when she was discharged.

This determination is final. In Title VII, the statute requires that, if the Commission determines that there is reasonable cause to believe that violations have occurred, it shall endeavor to eliminate the alleged unlawful employment practices by informal methods of conference, conciliation, and persuasion. Having determined that there is reason to believe that violations have occurred, the Commission now invites Respondent to join with it in an effort toward a just resolution of this matter. A representative of this office will be in contact with the Respondent in the near future to begin the conciliation process.

Disclosure of information obtained by the Commission during the conciliation process may only be made in accordance with Title VII and the Commission's Procedural Regulations. The confidentiality provisions of Sections 706 and 709 of Title VII and Commission Regulations apply to information obtained during conciliation.

If either party declines to enter into conciliation discussions, or when the Commission's representative is unable to secure an acceptable conciliation agreement, the Director shall so inform the parties, advising them of the court enforcement alternatives available to aggrieved persons and the Commission.

On behalf of the Commission:

Kevin J. Berry
District Director

April 29 2015
Date

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY  10004-2112
For General Information: (800) 669-4000
TTY: (800)-669-6820
District Office: (212) 336-3620
General FAX: (212) 336-3625

Ref:  EEOC Charge No:  520-2014-00057
      Nicole Anthony v. Arthur Glick Truck Sales, Inc.

Todd Glick
Arthur Glick Truck Sales Inc.
48 Bridgeville Road
Monticello, NY  12701

Dear Mr. Glick:

As stated the in the Letter of Determination for this charge, the U.S. Equal Employment
Opportunity Commission ("Commission" or "EEOC") is interested in starting conciliation
efforts.  As such, the Commission proposes the following remedies in order to resolve the
charge:

1. Respondent will not discriminate on the basis of race and age in all phases of
   employment including recruitment, hiring, job assignment, promotion,
   termination, training, and other terms, conditions, or privileges of
   employment

2. Respondent will not retaliate against any person because of opposition to
   any practice declared unlawful under the Title VII or the ADEA; because of
   the filing of a charge, giving of testimony or assistance, participation in any
   manner in any investigation, proceeding, or hearing under Title VII, the
   ADEA or another other named statutes.

3. Within 7 days of receiving a fully executed copy of this Agreement,
   Respondent will compensate the Charging Party with back pay, back
   benefits and compensatory damages.

4. Within 30 days of receiving a fully executed copy of this Agreement,
   Respondent will provide four hours of training to all employees in
   supervisory and management positions.  Respondent will provide training
   for new employees regarding the statutes enforced by the EEOC.

5. Within 7 days of receiving a fully executed copy of this Agreement,
   Respondent will designate a person or (person(s) at the executive level to
   whom employees may raise concerns or complaints of discrimination.

6. Within 7 days of receiving a fully executed copy of this Agreement, Respondent will post EEOC's poster in conspicuous places where employee notices are

7. Within six months of receiving a fully executed copy of this Agreement, Respondent will submit copies of all documents implementing changes in employment policies referenced in this Agreement, and records of the conduct of training programs, specifying the date and place of training and including a list of attendees.

Any conciliation agreement arrived at must be reduced to writing, signed by an authorized representative of the Respondent and, to be effective, must be signed by the Commission's District Director.

We request that by **May 12, 2015** Respondent provide a written counter-proposal responding to each item in the Commission's conciliation proposal or advise the Commission if it is not willing to conciliate this matter. If Respondent does not provide a reasonable written counter-proposal by that date, the Commission may deem that further efforts to conciliate this matter would be futile, and may fail conciliation. The Commission will be fair and flexible in considering any reasonable counter-proposal that Respondent presents.

I look forward to your timely response. If you have any questions, please feel free to contact me at 212-336-3764.

Sincerely,

Roxanne Zygmund
Roxanne Zygmund
Federal Investigator

"F"



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
For General Information: (800) 669-4000
TTY: (800) 669-6820
District Office: (212) 336-3630
General FAX: (212) 336-3625

**RESPONDENT**

Todd Glick
Arthur Glick Truck Sales, Inc.
48 Bridgewille Road
P.O. Box 349
Monticello, NY 12759

**RESPONDENT'S ATTORNEY**

Greg A. Riolo, Esq.
Jackson Lewis, P.C.
44 South Broadway
White Plains, New York 10601

Dear Mr. Riolo:

Re: EEOC Charge No. 520-2014-00057
Nicole Anthony v. Arthur Glick Truck Sales, Inc.

The EEOC has determined that efforts to conciliate this charge as required by Title VII of the Civil Rights Act of 1964, as amended and the Age Discrimination in Employment Act (ADEA) of 1967, as amended has have been unsuccessful. This letter constitutes the notice required by §1601.25 of the Commission's Procedural Regulations which provides that the Commission shall notify a respondent in writing when it determines that further conciliation would be futile or non-productive.

No further effort to conciliate this case will be made by the EEOC.

On Behalf of the Commission:

June 19, 2015
Date

Kevin J. Berry
District Director

cc: Nicole Anthony
1114 Route 52
P.O. Box 70
Loch Sheldrake, NY 12759-0070

EEOC Form 161-A (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE
### (CONCILIATION FAILURE)

| To: | Ms. Nicole Anthony<br>1114 Route 52<br>Loch Sheldrake, NY 12759 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2014-00057 | Roxanne Zygmund,<br>Investigator | (212) 336-3764 |

**TO THE PERSON AGGRIEVED:**

This notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

Kevin J. Berry,
**District Director**

June 19, 2015
*(Date Mailed)*

cc:   Greg Riolo, Esq.
Jackson Lewis,, P.C.
44 South Broadway
White Plains, New York  10601

"H"

Nicole Anthony

June 13, 2013

Complaints at Arthur Glick Truck Sales, INC

During the duration working at Arthur Glick Truck Sales, Inc., I've witness some procedures that were not done by the books for heavy duty and light duty dealers. The bosses Arthur Glick and Todd Glick knowingly and willingly defied some regulations and policies set forth by their financial lenders and Federal and state laws. Their franchises are kenworth Truck Company, their financial arm is Paccar Financial; GMC, and HYUNDAI whose financial arms are GE Capital and Ally Financial. They would make their Comptrollers both previous and current; adhere to their ways of how they wanted to do their payoffs on vehicles either through smartcash or curtailments ( I.e; altering vehicle invoices).

With the purchase of a new or used car the dealer would estimate the tax and registration fees due on each deal. In a given month of approximately 40 deals, Glick's would estimate all registrations cost rather transferring old plates or getting new plates ( tags for vehicles) at a cost from $150-$250 dollars for each customer. This is to be understood as a estimation for the customer and if any monies were owed to the customer they would receive a refund check. The owners would instruct their sales people and title clerk who also acted as finance manager to collect on every deal. Of the 40 deals at least 30 customers would have been over charged and due refunds for their NYS registration that the dealer already collected money on.  Typical cost for transferring plates is $65.00 when done at DMV.  So in some cases customers were due at least $85.00 per refund. In the six years I worked there this was done about every month. The title clerk would create the invoice rather credit or debit amount owed I was instructed only to bill those customers who had a owing balance and send them the invoice the customers who had credits (refunds owed) either didn't no they were over charged weren't told they were owed money and the invoice were filed away in a registration book NO CHECKS WERE EVER CUT. Only a select few called in and complained about registration differences. Then I had no choice but to issue them a check. So basically if there was no complaint, customers weren't getting refunds. And the previous title clerk Christina Hecht and current title clerk Rebecca Cohen knew of these matters but could not do anything about the matter. Some customers names that I know of who brought vehicles there are due refunds are Janet Osisami, Sandra Shaver, and Jesse York. Again they don't even know they are owed money. Glick's made their employees responsible for forging customers' names on contracts and warranty agreements as per the owners request if contracts were sent back in error because some information was missing in order for the funding companies to pay them quickly.  Glick's is currently on

suspension from New York State DMV from processing on their in house Triven system for abuse and misuse of their equipment. They were also found guilty in the current town court for knowingly passing an open title to another dealership.  They were suspected in the past few years of abusing the key code system. General Motors stepped in. Everything was swept under the rug and kept quiet, still don't know what happened with that but for a while they were suspended from using that system and keys were being duplicated through other dealerships because we were unauthorized. And their sister Barri Glick, who is also the companies Secretary, was under accusation for this matter because her computer's IP address was accessed.

More importantly I know for a fact that Arthur Glick Truck Sales. Inc., holds their FET tax payments off until they feel like paying the IRS.  Todd Glick often joked around about going to jail for not paying on time. On a monthly basis their lending companies, Ally or GE Capital Would perform an monthly audit. At that time Sussie is a person to contact for GE capital for the district. And Mike King is the district contact for Ally. The owners would have to produce the necessary documentation to the auditors to comply with their payoff of inventory agreements. Meaning if they chattel vehicles that were listed in inventory and if the vehicle was reported sold and registrations were processed they would be giving a list of vehicles that were subjected to scrutiny during the audit. And the dealership would have to pay these vehicles off to that finance arm. Depending if the dealership received the Customers deposits and funding from a financed bank, the dealership would fudged deposit tickets especially if the monies were received at a earlier time (hinch they would have to pay balances off earlier). This would be punishable to the dealer because they entered into an agreement that they would pay the vehicle off within 4 to 5 business days without any penalties. Upon the initial receipt of money. So they often had me cut and paste deposit tickets to give to the auditors because they lied on the sold dates. Original dates were too far out and they did not want to show this to auditors because they would basically have to pay extra interest. Because they were often caught after the audit on some of the deals, Arthur Glick implemented a new policy that he did not want the title clerk registering any vehicles until he got all his money regardless of policy with the lenders and he has her list every deal as a cash deal on the bill of sale now so the lenders wont contact the funding companies to get actual deposit dates. That being said when it comes down to paying off big trucks that cost hundreds of thousands of dollars they also have to pay Federal Excised Tax called FET. Heavy duty dealers have to pay 12% tax on taxable body chassis or tractors. This is collected in advance from the customer by the dealer before delivery. Glick's would collect this money let the money sit in their savings account and lie to the auditor about the truck being delivered or not, make up some reason that the truck is at a body company getting work done anything so they could buy time from paying the IRS the tax due. Penalties for paying FET tax late is 5% of the amount unpaid tax per month late. They know this because they have been incorporated since 1968 and been doing big truck business since then. When

often caught they would find a reason to blame their comptroller. Some of the big truck companies they dealt with on a regular basis are:

- Richard Wakeman Company
- Harry Miller
- Klein And Sons, Inc
- Mountain candy Distributors
- Thompson Sanitation Company
- Sutphen East Corp.
- Pisciotta Bros Construction
- Gillette d/b/a Phyljohn Distributors
- Jussar d/b/a Black bear Fuel Oil
- Anderman Oil Company

This is just a few companies that do business often and have brought lots of trucks big trucks from Arthur Glick Truck Sales Inc. And they held off paying a majority of that FET tax. Sometimes for long periods of times. The company is often responsible for fudging their financial statements to make themselves in good standing with banks because of monies they have borrowed. They have the comptroller alter the month end statements by changing the inventory amounts in the general ledger. They also show their vehicle receivable general ledger with a credit balance as if monies are owed when in reality it's an asset account and should reflect a debit balance this makes it look as if they are waiting to collect these monies when actually they already received them. There are labor issues as well within their service department area that they fail to address but no one challenges them so nothing is done about anything. A prior employee Herman who worked in service, was terminated as me for unjust causes and he wanted to use me as a witness during his unemployment hearing and the company lied numerous times to the administrative judge and said I wasn't available to speak with because they didn't want me to testify on his behalf. This sums up some of the issues I've witness as an employee and dealing with the owners on a first hand basis as to their financial issues because I did their books for the past six years myself and Robin Bolles, the companies Comptroller. I was hired to do a job and if I would have said something prior to being terminated I would definitely been fired early on.