UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____X

NICOLE A. ANTHONY,

             Plaintiff,

        v.

ARTHUR GLICK TRUCK SALES, INC., *et al.*;
ARTHUR GLICK (President, Arthur Glick, Inc.);
TODD GLICK (Vice President, Arthur Glick Inc.);
BARRI GLICK (Secretary, Arthur Glick, Inc.); and
ROBIN BOLLES (Comptroller, Arthur Glick, Inc.),

             Defendants.

_____X

15 Civ. 07270 (NSR-LMS)

**Second Amended
Complaint**

## SECOND AMENDED COMPLAINT

1.     Plaintiff Nicole A. Anthony, through her *pro bono* attorneys, brings this action to remedy intentional acts of employment discrimination on the basis of Plaintiff's race, gender and age as well as retaliation after Plaintiff complained about the discriminatory acts.

2.     Throughout her six-year employment, Plaintiff was (1) subjected to pervasive verbal abuse that created a hostile work environment, (2) paid significantly less than other employees, (2) unlike other employees, required to perform substantially more work and juggle multiple jobs, (3) denied training offered to other employees. These discriminatory acts occurred because of Plaintiff's race, gender and age.

3.     Plaintiff seeks lost wages including back pay from the first date of employment to the date of judgment and other equitable relief; compensatory damages for humiliation, emotional and physical distress, medical expenses, financial hardship, damage to reputation, diminished ability to obtain employment, loss of marketable skills and related compensation, and out-of-pocket costs; punitive damages for conduct that was malicious or recklessly indifferent to Plaintiff's rights; civil penalties; and other damages and further relief as deemed just.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

5.     Venue is proper in this judicial district under 28 U.S. U.S.C. § 1391.

## PARTIES

6.     Plaintiff is a young, African-American woman. During her six-year employment, Plaintiff had three young children for which she was the primary caretaker. Plaintiff resides in Loch Sheldrake, Sullivan County, New York.

7.     Defendant Arthur Glick Truck Sales, Inc. (the "Company") is a corporation formed under the laws of New York. The Company operates under the trade name Glick Auto & Truck Center. Upon information and belief, the Company's departments include, among others, sales, administration, service, parts and finance. The Company has approximately 30 to 40 employees. The Company's primary place of business is in Sullivan County, New York.

8.     Defendant Arthur Glick is the President of the Company.

9.    Defendant Todd Glick is the Vice President of the Company and the son of Defendant Arthur Glick.

10.    Defendant Barri Glick is the Company's Director of Parts Operations and the daughter Defendant Arthur Glick.

11.    Defendant Robin Bolles is currently the Company's Office Manager and Comptroller.

12.    Defendants Arthur Glick and Todd Glick oversee the Company's day-to-day operations.

## HOSTILE WORK ENVIRONMENT

13.    In September 2006, while Plaintiff already had a job, she asked for help from The Center for Workforce Development in Monticello, New York, and made it clear that she wanted to learn new skills.

14.    At that time, Plaintiff was a 22-year old single mother with three children. Plaintiff wanted to learn new skills and obtain a better job to help take care of her children.

15.    In early 2007, Plaintiff was working at a local Walmart as a cashier when the Company's Comptroller, Joe Twyman, approached her at work and asked Plaintiff if she wanted a better job. Twyman asked Plaintiff if she had any experience with accounting, and Plaintiff explained that she had gone to Sullivan County Community College for accounting and had not finish her Business degree.

16.    Twyman stated that he was impressed with Plaintiff's hard work at Walmart and good attitude. Twyman offered Plaintiff a job to handle accounts

receivable and told Plaintiff she did not need to be interviewed with anyone else, asked her when could she start, and asked her to come by the dealership to fill out the application for the employee file.

17.     Twyman stated that Plaintiff would have the opportunity for a salary that would increase over time as well as training that would increase her marketable skills.

18.     On March 27, 2007, Plaintiff Nicole Anthony began working for the Company in the Accounting Department (also referred to as the "Bookkeeping Department").

19.     Plaintiff later learned that The Center for Workforce Development agreed to pay $3,000 to the Company if the Company hired Plaintiff and gave her on-the-job training to increase her job skills.

20.     Upon information and belief, the Company stated in its contract with The Center for Workforce Development that the Company would not have hired Plaintiff unless the Company had been offered the money.

21.     Plaintiff was the only African-American employee at the Company. The Company did not hire any African-Americans for any position at the Company during the six years that Plaintiff worked there even though numerous African-Americans applied for jobs.

22.     Upon information and belief, the Company has not hired an African-American for any job since Plaintiff was fired.

23.     The jobs at the car dealership, which operates in a traditionally male-dominated industry, were often segregated by gender.

24.     Upon information and belief, only women worked in the office located behind glass windowpanes to right off the showroom at the dealership.

25.     Upon information and belief, only men worked in the service department.

26.     Upon information and belief, Plaintiff was the youngest woman working in the office and the youngest employees in the Company.

27.     Beginning on her first day of her employment, older, white female employees began to verbally abused Plaintiff. The verbal abuse occurred frequently, often on a daily basis, throughout Plaintiff's six-year employment with the Company. The abuse was pervasive and severally affected the terms and conditions of Plaintiff's employment.

28.     Other employees demanded Plaintiff handle tasks outside the job for which she was hired.

29.     For example, employees abused Plaintiff if she did not answer the phones for the dealership and route them to the proper person. Even though Plaintiff was hired to work on accounts receivable, she was essentially required to act as a receptionist for the dealership.

30.     When Plaintiff did not answer the phone calls because to do so would interfere with her job in accounting, other employers would call her "stupid" or other derogatory names.

31.    Upon information and belief, no other employee was required to work outside what the Company had hired them to do.

32.    Upon information and belief, no other employee was subjected to derogatory names such as being repeatedly called "stupid."

33.    Plaintiff repeatedly told Defendants about the other employee's abusive behavior and the hostile work environment that the behavior created.

34.    Defendants responded by acknowledging that such behavior was wrong and abusive.

35.    Defendants Arthur Glick and Todd Glick knew about the verbal abuse and began to contribute to the harassment. For example, on November 4, 2008, the day of the presidential election Plaintiff wore a t-shirt with the word "Obama" on it. Defendant Arthur Glick told her to take the shirt off because it "was not Halloween."

36.    Defendant Arthur Glick would also refer to Barack Obama as the President of "your people" in front of Plaintiff and other employees.

37.    Defendant Todd Glick also frequently referred to "your people" when around Plaintiff and other employees. For example, Defendant Todd Glick would refer to "your people being on Section 8" and make comments of a similar nature in front of Plaintiff and other employees.

38.    Defendants Arthur Glick and Todd Glick often required Plaintiff sit at the front of the dealership in a place traditionally associated with reception. In fact,

customers or visitors would treat her as the receptionist, which had the effect of interfering with her job duties in accounting.

39.    When she was not required to sit at the front of the dealership, Defendant Todd Glick intentionally isolated Plaintiff from other employees. Defendant Todd Glick would shut various doors and tell other employees to keep them shut so that she was left alone in her workplace even though Plaintiff needed to be able to communicate with other employees. No other employee was isolated in this manner.

40.    The abuse continued and escalated when Plaintiff tried to lessen it. For example, co-worker Karen Brown, the administrative assistant to Defendant Arthur Glick, told Plaintiff to go outside so that Plaintiff could get her "ass kicked" by her.

41.    Other employees intentionally created unnecessarily stressful situations to harass her. For example, employees would talk about Plaintiff in front of Plaintiff as if she was not there. Likewise, if another employee answered the phone and it was a customer who needed accounts receivable, the other employee would put customer on hold without Plaintiff's knowledge and without informing her. This was done to sabotage and undermine Plaintiff at her job.

42.    Plaintiff was concerned about retaliation because she was the primary caretaker of her children, a fact that the Defendants were well aware.

43.    As a result of the hostile work environment and her fear that she would not be able to take care of her children, Plaintiff became demoralized,

suffered poor health, significant depression, anxiety and other forms of somatization. Among other things, Plaintiff had difficulty sleeping and she developed a raspy voice and became hoarse. Plaintiff sought medical attention for the loss of her voice.

44.     Due to her low hourly wage and the fact that the Company did not provide Plaintiff with health care, Plaintiff was unable to seek treatment for the depression and anxiety.

45.     In March 2010, when promises by Defendants Arthur Glick and Todd Glick were not kept to end the harassment, Plaintiff documented her request that the hostile work environment be corrected by sending an email to Defendant Arthur Glick and including Defendants Todd Glick, Barri Glick and Robin Bolles.

46.     As a result of this written discrimination complaint, the Company notified its insurance provider.

47.     After an investigation, the insurance company required the Company to promulgate guidelines for appropriate and legal work place behavior.

48.     Upon information and belief, the insurance provider required all employees to acknowledge receipt of these guidelines in writing. While Plaintiff signed her acknowledgement of the guidelines, other employees explicitly refused to read them and explicitly refused to sign the document.

49.     Defendants Arthur Glick, Todd Glick and Barri Glick refused to correct or even address these employees' refusal to not engage in illegal, discriminatory behavior.

50.     Plaintiff continued to ask Defendant Arthur Glick and Todd Glick to correct the abusive behavior and hostile work environment but they refused to correct it during the six years she worked there.

51.     Plaintiff's health continued to become worse from the hostile work environment.

### ADDITIONAL DISCRIMINATION AFFECTING THE TERMS AND CONDITIONS OF PLAINTIFF'S EMPLOYMENT AND RETALIATION

52.     Prior to being hired, Defendants had promised Plaintiff that she would receive training, a salary and healthcare for handling for handling accounts receivable.

53.     Instead, the Company initially paid $10 an hour to Plaintiff.

54.     Upon information and belief, under the Company's agreement with The Center for Workforce Development, Plaintiff was also to receive an increase in her hourly wage after ninety days of on the job training. Defendants, however, did not give Plaintiff the raise until September 2007.

55.     Upon information and belief, in July 2007, the Company hired Defendant Robin Bolles to work in the Accounting Department for a salary around $52,000-$57,000 a year and provided her with health care. Defendant Robin Bolles did substantially the same work in the Bookkeeping Department as Plaintiff.

56.     In November 2007, Joe Twyman left the Company. Defendant Robin Bolles received the title of "Comptroller" although Plaintiff and Defendant Robin Bolles worked as a team and Plaintiff had more seniority at the Company. The

8

Company also provided Defendant Robin Bolles training that was not offered to Plaintiff.

57.     Upon information and belief, Defendant Robin Bolles is a white woman who was in her 40s during Plaintiff's employment and is currently over the age of 50 years old.

58.     Beginning in January 2010, the Company required Plaintiff to handle accounts payable in addition to accounts receivable and Plaintiff's salary increased to $14 an hour.

59.     Despite repeated promises from Defendants, Plaintiff never received a salary or health care or training that increased her market value.

60.     The Company never provided Plaintiff with a salary or health care although it gave salaries and health care to other employees including employees in the Accounting Department.

61.     The Company never offered or provided training to Plaintiff even though other employees received such training to improve their skills and advance their careers and increase their marketable skills.

62.     On Friday, May 17, 2013, Plaintiff emailed that she was seriously ill and otherwise suffering emotional and physical distress from the hostile work environment that they had intentionally refused to correct and need to take a sick day.

63.     Defendants fired Plaintiff the same day.

64.     Plaintiff filed a timely complaint with the Equal Employment Opportunity Commission ("EEOC"). Finding the complaint had substantial merit, the EEOC launch an investigation.

65.     After Plaintiff and the Company participated to the investigation, including a written response from Defendant Todd Glick on behalf of the Company, the EEOC found "reasonable cause" that Defendant committed illegal discrimination and retaliation. The EEOC found that "the Respondent's asserted defense does not withstand scrutiny."

### CLAIM ONE: RACE DISCRIMINATION IN VIOLATION OF
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

66.     Paragraphs 1-65 are re-alleged and incorporated by reference.

67.     The Company's conduct as alleged herein constitutes discrimination based on race in violation of Title VII, 42 U.S.C. §§ 2000e to 2000e-17.

### CLAIM TWO: SEX DISCRIMINATION IN VIOLATION OF
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

68.     Paragraphs 1-65 are re-alleged and incorporated by reference.

69.     The Company's conduct as alleged herein constitutes discrimination based on sex in violation of Title VII, 42 U.S.C. §§ 2000e to 2000e-17.

### CLAIM THREE: RETALIATION IN VIOLATION OF
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

70.     Paragraphs 1-65 are re-alleged and incorporated by reference.

71.     The Company's conduct as alleged herein constitutes retaliation because Plaintiff opposed and charged employment discrimination in violation of Title VII, 42 U.S.C. §§ 2000e to 2000e-17.

10

## CLAIM FOUR: RACE DISCRMINATION IN VIOLATION OF
## NEW YORK STATE HUMAN RIGHTS LAW

72.     Paragraphs 1-65 are re-alleged and incorporated by reference.

73.     Defendants' conduct as alleged herein constitutes race discrimination

in violation of New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297.

## CLAIM FIVE: SEX DISCRMINATION IN VIOLATION OF
## NEW YORK STATE HUMAN RIGHTS LAW

74.     Paragraphs 1-65 are re-alleged and incorporated by reference.

75.     Defendants' conduct as alleged herein constitutes sex discrimination in

violation of New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297.

## CLAIM SIX: AGE DISCRMINATION IN VIOLATION OF
## NEW YORK STATE HUMAN RIGHTS LAW

76.     Paragraphs 1-65 are re-alleged and incorporated by reference.

77.     Defendants' conduct as alleged herein constitutes age discrimination in

violation of New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297.

## CLAIM SEVEN: RETALIATION IN VIOLATION OF
## NEW YORK STATE HUMAN RIGHTS LAW

78.     Paragraphs 1-65 are re-alleged and incorporated by reference.

79.     Defendants' conduct as alleged herein constitutes retaliation because

Plaintiff opposed and charged employment discrimination in violation of New York

State Human Rights Law, N.Y. Exec. Law §§ 290 to 297.

## PRAYER FOR RELIEF

Plaintiff requests that the court award:

(i) lost wages including back pay from the first date of employment to the date of judgment and other equitable relief;

(ii) compensatory damages for humiliation, emotional distress, medical expenses, financial hardship, damage to reputation, diminished ability to obtain employment, loss of marketable skills and related compensation, and out-of-pocket costs;

(iii) punitive damages for conduct that was malicious or recklessly indifferent to Plaintiff's rights;

(iv) civil penalties not to exceed $100,000 for conduct that was malicious; and

(v) other damages and further relief as deemed just.

## JURY DEMAND

Plaintiff requests trial by jury.

Date: August 4, 2016

_____/s/BL_____
Brian Lehman
Matthew Ortiz
The Lehman Law Group
brian@lehmanlawgroup.com
matthew@lehmanlawgroup.com

Lehman LG LLC
47-39 Vernon Blvd.
Long Island City, New York 11101
(724) 453.4626
*Pro Hac Vice* Admissions in progress

**CERTIFICATE OF SERVICE**

I, Brian Lehman, hereby certify that on August 4, 2016, I served the

foregoing by ECF/CM and email to the following attorneys for Defendants:

Greg Anthony Riolo and
Rebecca Marie McCloskey,
Jackson Lewis LLP
44th South Broadway
White Plains, NY 10601
riolog@jacksonlewis.com
rebecca.mccloskey@jacksonlewis.com

_____/s/BL_____
Brian Lehman